DECEMBER 9,
1874.                    WATTS *v.* SAWYER.

In an action of assumpsit for not accepting goods sold, it appeared that the defendant agreed to take the goods and pay the plaintiff their cost for the same; there was also evidence tending to show that he afterwards refused to perform his contract by accepting the goods. *Held,* that a nonsuit could not be ordered even though there were no evidence as to the cost of the goods.

Evidence of the value of goods is admissible on the question of their cost. Whether a memorandum, which a witness knew when it was made to be correct, can go to the jury as evidence, depends upon whether the witness, after examining it, is able to state the fact from memory.

ASSUMPSIT, by Benjamin F. Watts against Jacob Sawyer, for not accepting goods sold. The plaintiff offered in evidence the following writing (the signature and delivery of which were properly proven), " as a memorandum of the agreement made by the parties." " Suncook, Sept. 23, 1871. This certifies that I have this day bought the stock and fixtures (including store-wagon) of B. F. Watts, in Bartlett's block, and am to pay him their cost for the same. Jacob Sawyer." The plaintiff called Henry H. Hartwell as a witness, who testified that, on October 23, 1871, he went with Watts to see the defendant. Watts inquired of the defendant whether he intended to take the goods according to their trade. The defendant said he thought he should not; that he could do nothing with old Bartlett on the store. Watts said he intended the defendant should keep his agreement; that he intended to proceed immediately to take an invoice of the goods,— and invited the defendant to be present at the taking of the same.

Watts and the witness then went to the store, and, with the assistance of one Kame, began to take the invoice. Kame took down and counted the various articles ; Watts hunted up the bills of purchase, showing the cost of the goods. The witness then counted or measured the goods, and then made entries upon a schedule of the articles and their cost, as shown by the bills. The parties went through all the goods in this way. They ascertained the amount of freight, which was added in computing the cost. Five days were occupied in this way. Watts would read off the articles from the schedule, and when the witness had written a page of a bill of sale from Watts to the defendant, he would hand it to Watts, the witness then taking the schedule, and reading from the schedule while Watts examined the bill of sale. During the taking of the invoice, the defendant frequently came into the store and said he should not take the goods. The goods were sold at auction on November 14, the witness Hartwell acting as auctioneer. Just before the sale, the defendant came into the store, and said,—"Gentlemen, I wish you to take notice that I am now ready to take these goods, according to my trade with Mr. Watts, and I forbid the sale. I am now ready to take an invoice of all the goods I bought of Mr. Watts, according to our agreement." Watts reminded him that the invoice had been taken with his knowledge and opportunity to be present, and declared that he should proceed to sell the goods. Holding the bill of sale in his hand, Mr. Hartwell announced that the goods would be sold at so much on the dollar of that inventory, and they were struck off to one Hatch at 62½ cents on the dollar of the amount of the invoice. The plaintiff then offered the bill of sale in evidence, " for the purpose," as his counsel stated, " of showing what was sold at the auction, and what the articles sold brought."

The court being of the opinion that the paper would be inadmissible for the purpose of showing the cost of the goods, being but second-hand and hearsay evidence, and that, if it went to the jury for one purpose, it might affect the case improperly in other branches of it, declined to admit the evidence for any purpose, stating, however, that the counsel might inquire of the witness directly, allowing the witness at the same time to examine the paper, whether the goods sold were the same goods of which he took the invoice, and what sum the goods sold for, on the basis of 62½ cents on the dollar of the whole amount of the invoice.

To this ruling the plaintiff excepted. The witness then examined the paper, and answered the questions suggested by the court.

The plaintiff offered to show this list and description of the articles, and to show *their value* as evidence of their cost, in connection with the other evidence in the case. The court rejected the evidence, and the plaintiff having no further evidence to offer, the court directed a nonsuit; to which order the plaintiff excepted.

At the request of the defendant, the court transferred the question whether the written agreement signed by the defendant was a sufficient memorandum within the statute of frauds.

*Marshall & Chase*, for the plaintiff.

*Tappan & Mugridge*, for the defendant.

LADD, J. 1. The memorandum, signed by the defendant, dated Sept. 23, 1871, was very clearly sufficient, within the statute of frauds.

2. I cannot conceive what ground there is to claim that there was no breach, by the defendant, of his contract, to take and pay for the goods. Hartwell testified that on October 23, 1871, he went with Watts to see the defendant, and the defendant then told Watts, in his hearing, that he thought he should not take the goods according to the trade; also, that during the taking of the invoice, the defendant frequently came into the store, and said he should not take the goods. This evidence most undeniably tends to show a breach of the contract by the defendant; and, further, if the evidence were believed, his liability was fixed at the time when he afterwards offered to accept the goods, and forbade the sale. The plaintiff had a right to regard the defendant's renunciation of the contract as final, and such as would release him from any further steps in its performance. I think the order for a nonsuit cannot be sustained.

3. It is clear that the invoice taken by the plaintiff, with the assistance of Hartwell and Kame, in the manner stated in the case, was not admissible to show the cost of the goods. If admissible at all, for any purpose, I think it must be as a memorandum made by the witness, which he knew, at the time it was made, to be correct, and then only in case his memory was not refreshed by an examination of it, so that he could then state, from recollection, such matters contained

in it as might be material. *Kelsea* v. *Fletcher*, 48 N. H. 282. I do not see why evidence, to show of what articles the stock was made up, as well as the price each article brought at the sale, on the basis of $62\frac{1}{2}$ per cent. of the prices set down in the paper, was not admissible; and that such was the view of the court, at the trial, seems manifest from the case. Whether the jury could be permitted to examine the paper for the purpose of ascertaining those facts, must depend upon whether the paper was admissible, as a memorandum, according to the well settled and well understood rules of practice in this state on that subject.

4. The plaintiff offered to show the value of the goods as evidence upon the question of their cost, which was refused by the court. It seems to me impossible to say that evidence of value has no tendency to show cost. In some sense the two terms are certainly convertible. In practical affairs, the value of a thing is taken to be what it will sell for in the market; hence, evidence of sales, that is, of cost, is every day admitted on the question of value, and I think there was error in excluding this evidence.

CUSHING, C. J., and SMITH, J., concurred.